IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

DEMETRIUS FRAZIER,

  Plaintiff,

 v.

JOHN Q. HAMM, Commissioner,
Alabama Department of Corrections,

&

TERRY RAYBON, Warden,
Holman Correctional Facility,

  Defendants.

No. 2:24-cv-732-ECM

**CAPITAL CASE**

**Execution set for February 6, 2005**

_____

## MOTION FOR PRELIMINARY INJUNCTION

On October 18, 2024, Attorney General Marshall moved the Alabama Supreme Court (ASC) to authorize Governor Ivey to set an execution time frame for Mr. Frazier to be executed, by nitrogen hypoxia, at the direction of Defendant Hamm by Defendant Raybon.[1] On November 15, 2024, Mr. Frazier filed an action, under 28 U.S.C. § 1983, alleging the Protocol violates the Eighth Amendment, seeking injunctive relief against Defendants.[2] Instead of an answer, Defendants

---

[1] State's Mot. to Set an Execution Date [sic], *Ex parte Demetrius Frazier*, No. 1981111 (Ala. Oct. 18, 2024) (attached as Ex. A).

[2] ECF Doc. 1.

1

moved to dismiss[3] and Mr. Frazier has responded to that motion.[4] Discovery has not commenced.

On December 16, 2024, the ASC granted the Attorney General's motion and authorized Defendant Ivey to set a time frame for Mr. Frazier to be executed by Defendant Raybon at the direction of Defendant Hamm.[5] The Order did not designate a method of execution.[6] On January 6, 2025, Governor Ivey "set a thirty-hour time frame for the execution [of Mr. Frazier] to occur beginning at 12:00 a.m. on Thursday, February 6, 2025, and expiring at 6:00 a.m. on Friday, February 7, 2025."[7] Barring a preliminary injunction, Mr. Frazier will be executed before his suit is decided on the merits.

The data set for nitrogen hypoxia executions is small—three—but provides clear results: Alabama's method does not work the way Defendants claim and necessarily causes conscious suffocation, in violation of the Eighth Amendment. Knowing that, Demetrius Frazier moves this Court for an order enjoining his execution until Defendants adopt a feasible and available alternative from Mr.

---

[3] ECF Doc. 14.

[4] ECF Doc. 21.

[5] Order, *Frazier*, No. 1991310 (Ala.) (attached as Ex. B).

[6] *Id.*

[7] Letter from Gov. Ivey to Defendant Hamm (Aug. 19, 2024) (attached as Ex. C).

Frazier's Complaint,[8] or if they refuse, until his challenge has been decided on the merits.

## FACTS[9]

In 2018, the Alabama Legislature authorized execution by an untested method: nitrogen hypoxia.[10] They did so sight unseen because no state had devised a protocol.[11] Despite not having a protocol to review, death-sentenced prisoners had 30 days (beginning June 1, 2018) to decide whether to choose to die by nitrogen hypoxia or remain subject to lethal injection.[12] Mr. Frazier—who had a lawsuit challenging lethal injection three months from trial[13]—opted out of lethal injection, while reserving his right to challenge the constitutionality of any nitrogen hypoxia protocol Defendants adopted.[14]

---

[8] ECF No. 1.

[9] Many of these facts come from the Complaint.

[10] Ala. Code § 15-18-82.1(b)(2).

[11] Oklahoma, in March 2018, became the first state to adopt nitrogen hypoxia. *See* Nolan Clay, *Executions by gas stalled indefinitely while state seeks willing seller of device*, The Oklahoman, Jan. 17, 2019, https://www.oklahoman.com/story/news/columns/2019/01/27/executions-by-gas-stalled-indefinitely-while-state-seeks-willing-seller-of-device/60476044007/. They still don't have a protocol. *See* Sean Murphy, *Oklahoma governor says he's not interested in changing from lethal injection to nitrogen executions*, AP, Jan. 30, 2024, https://apnews.com/ article/oklahoma-death-penalty-lethal-injection-nitrogen-stitt-f1877dba8f521554e1658f92eabcffba.

[12] Because the deadline fell on a Saturday—June 30, 2018—it became due on July 2, 2018, by operation of state law. *See Smith v. Dunn*, 568 F. Supp. 3d 1244, 1251 (M.D. Ala. 2021).

[13] Am. Scheduling Order, *In re Alabama Lethal Injection Protocol Litig.*, No. 2:12-cv-0316-WKW (June 5, 2018), ECF No. 424 (setting Sept. 4, 2018, trial date).

[14] Demetrius Frazier Opt-In Form (attached as Ex. D). Between June 26, 2018, and the July 2 deadline, an unknown ADOC official ordered Warden Raybon's predecessor to distribute the opt-in form "to all death row inmates." *Smith*, 568 F. Supp. 3d at 1252 (citation omitted).

3

More than five years later, Defendants finally announced they were ready to use nitrogen as a method of execution, releasing a heavily redacted execution protocol (Protocol)[15] while asking for an execution date for Kenneth Eugene Smith.[16] In responding to a challenge brought by Mr. Smith, "Defendants Hamm and Raybon represented to this Court the Protocol would 'cause unconsciousness within seconds' of nitrogen flowing into the mask."[17] These predictions were wrong, as set forth in the Complaint (and below).

**The execution of Kenneth Eugene Smith**

On January 25, 2024, Mr. Smith became the first person in the world to be executed by nitrogen hypoxia.[18] Brandon McKenzie, an ADOC captain, was the execution team captain and responsible for the consciousness check.[19] Several witnesses were present, including Mike Sennett, one of victim Elizabeth Sennett's sons.[20] Captain McKenzie has testified, in prior litigation, that Mr. Smith remained

---

[15] Redacted Nitrogen Execution Protocol (Protocol) (attached as Ex. E). The redactions have prevented Mr. Frazier—and others, including other death sentenced prisoners, lawmakers, and the public—from meaningfully assessing it.

[16] Mot. to Set Execution Date for Kenneth Smith (attached as Ex. F).

[17] ECF No. 1 at ¶ 24 (citation omitted).

[18] *Id.* ¶¶ 21-22.

[19] *Id.* ¶¶ 23, 36.

[20] *Id.* ¶ 27. Mr. Sennett had a comparator for Mr. Smith's nitrogen hypoxia execution. He had witnessed the 2010 execution, by lethal injection (using a three-drug protocol beginning with five grams of sodium thiopental), of Mr. Smith's co-defendant, which he described as "like him going to sleep." *Id.* ¶¶ 28-30.

conscious for "minutes" after the nitrogen began flowing into the mask.[21] Mr. Sennett described Mr. Smith as looking like "a fish out of water for some time."[22] He continued, "We were told by some people that worked [for ADOC] that he'd take two or three breaths and he'd be out and gone. That ain't what happened. After about two or three breaths, that's when the struggling started."[23] Those observations—and Captain McKenzie's testimony—establish Mr. Smith was conscious for several minutes after his breathing air was cut off.

**The executions of Alan Eugene Miller and Carey Dale Grayson**

On September 26, 2024, Defendants executed Alan Eugene Miller under the Protocol.[24] Captain McKenzie was again captain of the execution team and responsible for the consciousness assessment.[25] Captain McKenzie did not determine Mr. Miller was unconscious until approximately six minutes after the nitrogen began flowing.[26] According to media witnesses, Mr. Miller remained

---

[21] *Id.* ¶ 37; Mot. Hr'g Tr. (*Grayson* Tr.), *Grayson v. Hamm*, No. 24-13660, ECF No. 9-2 (11th Cir. Nov. 11, 2024) at 244 (I-147:2-5) ("[I]t seemed like a while. I'm not exactly sure how long it was, but it seemed to me like several minutes or so, but I'm not sure how many minutes it was."); *id.* at 253-54 (I-156:17-I-157:2).

[22] ECF No. 1 at ¶ 45.

[23] *Id.* ¶ 46 (footnote omitted); *see also id.* ¶ 47 (he described "all that struggling and jerking and trying to get off that table," and said a nitrogen hypoxia execution is "just something I don't ever want to see again") (footnote omitted).

[24] *Id.* ¶ 48.

[25] *Id.* ¶¶ 49-50.

[26] *Id.* ¶ 50.

conscious for several minutes after the nitrogen began flowing during which he writhed and struggled against the restraints and gasped for air.[27] Mr. Miller's responses after the nitrogen began flowing showed signs of conscious suffocation.

On November 21, 2024, Defendants executed Carey Dale Grayson by nitrogen hypoxia using the Protocol. A media witness reported Mr. Grayson's experience was virtually identical to Mr. Miller's:

> When the nitrogen began flowing, Grayson tightly clenched his hands, took deep gasps, shook his head vigorously and pulled against his restraints. He appeared to lose consciousness at 6:18 p.m., about six minutes after the gas began flowing.[28]

At Mr. Grayson's preliminary injunction hearing, Defendants' expert, Joseph Antognini, M.D., testified the Protocol would cause loss of consciousness "very quickly"—"probably . . . within 30 to 40 seconds after the nitrogen starts to flow at that high level."[29] This testimony differs from the facts observed by Defendants' own witnesses, described above, at all three nitrogen hypoxia executions under the Protocol.

## LAW & ARGUMENT

---

[27] *Id.* ¶¶ 51-53; *Grayson* Tr. at 160-63 (I-63:22-I-66:9) (Defendant Hamm being questioned about media reports).

[28] Marty Roney, et al., *Carey Dale Grayson executed in Alabama in hiker's murder; 3rd nitrogen gas execution in US*, USA Today, Nov. 21, 2024, https://www.usatoday.com/story/news/nation/2024/11/21/carey-dale-grayson-execution-alabama-nitrogen-gas/76489211007/.

[29] *Grayson* Tr. at 134 (II-73:14-25); *see also Smith v. Hamm*, No. 2:23-cv-656-RAH, 2024 WL 116303 (M.D. Ala. Jan. 10, 2024), at *6 (recounting Dr. Antognini's "professional opinion" that "the Protocol will result in a likely 35 to 40 second time to unconsciousness").

6

"[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."[30] A preliminary injunction is justified when "necessary to preserve the effectiveness of the ordinary adjudicatory process."[31] The primary reason to grant a preliminary injunction is "to preserve the court's power to render a meaningful decision after a trial on the merits."[32]

To obtain a preliminary injunction, Mr. Frazier must persuade this Court that various factors, on balance, tip in his favor. Those factors are (1) a substantial likelihood of success on the merits; (2) the risk of irreparable injury; (3) the balance of the equities; and (4) the public interest.[33] Because a preliminary injunction "is an extraordinary and drastic remedy," Mr. Frazier must make "'*a clear showing*.'"[34] Any of the four factors may provide a reason for this Court to enter or deny an injunction. "When one factor is dispositive, a district court need not consider the others."[35]

---

[30] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

[31] *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1124 (8th Cir. 2015).

[32] 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2947, at 112, 114 (3d ed. 2013).

[33] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[34] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (quoting 11A Wright & Miller § 2948) (emphasis in original).

[35] *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019).

The Protocol violates the Eighth Amendment because it creates an unnecessary risk of superadded pain and survivable hypoxia induced injury. Because Mr. Frazier has a substantial likelihood of proving one or both of his claims after a trial, he will suffer irreparable harm without an injunction. Moreover, the equities are in his favor, and it is in the public interest to prevent Mr. Frazier from being executed in violation of the Eighth Amendment. Defendants should be enjoined from executing him using the Protocol[36] until after a trial on the merits is held.

A.    **Case law governing method of execution challenges.**

A death-sentenced prisoner challenging a method of execution must show the method creates a "demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives."[37] "The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.'"[38] While the "severe pain" at issue in *Baze* was suffocation of a conscious person,[39] "a substantial risk of conscious suffocation can create an Eighth Amendment problem

---

[36] The preliminary injunction should permit Defendants to execute Mr. Frazier using one of his alternatives.

[37] *Baze v. Rees*, 555 U.S. 35, 61 (2008).

[38] *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (citations omitted).

[39] *Baze*, 555 U.S. at 53.

regardless of the method of execution being used."[40] A prisoner's proposed alternative method need not be authorized by state law.[41]

### B. Mr. Frazier has a substantial likelihood of success on his claim the Protocol creates a risk of superadded pain because it consciously suffocates the prisoner.

Mr. Frazier alleges the Protocol violates the Eighth Amendment because it creates a risk of superadded pain.[42] That superadded pain is the recognized pain of being suffocated while conscious. Defendants maintain their position that the pain of conscious suffocation from this protocol is lesser than the pain of conscious suffocation in the three-drug protocol. Defendants further admit, without elaboration, that there are less painful and painless ways a person can be deprived of oxygen while conscious.[43] Defendant claims to know these ways but curiously did not implement them here.[44]

---

[40] *Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894, 898 (11th Cir. 2024). This unanimous holding renders Defendants' argument—that *Baze* does not apply because "the method of execution" there "was completely different," ECF No. 14 at 10-11—meritless.

[41] *Bucklew v. Precythe*, 578 U.S. 119, 153 (2019) (Kavanaugh, J., concurring).

[42] ECF Doc. 28-1.

[43] ECF No. 14 at 11 ("There are more or less painful ways (and even *painless* ways) that one can be deprived of oxygen while conscious") (emphasis in original).

[44] Defendants' knowledge of less painful and painless methods of asphyxiation by oxygen deprivation undercuts their argument that Mr. Frazier has not met his (purported) burden to "allege that the method was '*designed* to superadd terror, pain, or disgrace,'" ECF No. 14 at 9 (emphasis in original) (quoting *Grants Pass v. Johnson*, 603 U.S. __ (2024)); *see also id.* (Mr. "Frazier must plead plausible facts that would prevent prison officials from pleading that they were subjectively blameless.") (internal quotation marks omitted) (quoting *Glossip v. Gross*, 576 U.S. 863, 877 (2015)).

There is medical support for Mr. Frazier's position: Dr. Brian McAlary's declaration offered in Mr. Grayson's challenge.[45] Dr. McAlary is a board-certified anesthesiologist who has been practicing medicine for over 50 years. After reviewing the Protocol (in redacted form), it was his medical opinion the Protocol creates a risk of conscious suffocation, and the failure to give a sedative before the procedure increases the psychological pain of the procedure beyond that of a normal execution.[46]

Mr. Frazier has provided evidence that he, like all three prisoners who preceded him, will remain conscious for minutes after his breathing air is cut off. He has offered two feasible and readily available alternatives. Defendants admit they know of painless methods of asphyxiation which they have, inexplicably, failed to adopt. Given this, Mr. Frazier has a substantial likelihood of success on the merits of his Eighth Amendment claim.

### C. Mr. Frazier will be irreparably harmed if he is executed using the Protocol before this case is resolved on the merits.

To obtain a preliminary injunction, Mr. Frazier must show he will suffer irreparable harm if his execution under the Protocol is not enjoined. "An injury is

---

[45] Decl. of Dr. Brian McAlary (McAlary Decl.) (attached as Ex. G).
[46] *Id*.

'irreparable' only if it cannot be undone through monetary remedies."[47] The harm Mr. Frazier will suffer is evident and irreparable—he will be executed in violation of the Eighth Amendment, and his suit will be moot. Because the harm Mr. Frazier will suffer is irreparable, this factor weighs heavily in favor of granting a preliminary injunction.

> **D.** **The public has an interest in ensuring a merits determination about this novel method of execution Defendants intend to export to the rest of the country.**

It is not an exaggeration to say the nation, if not the world, has an interest in the creation and use of this novel method of execution. Counsel for Defendants, Attorney General Marshall, in a press conference the day after Mr. Smith's execution admitted as much, explaining to "my colleagues across the country . . . Alabama has done it, and now, so can you," while promising Alabama stood "ready to assist you in implementing this method in your states."[48]

This Court has recognized the public interest by, *sua sponte*, releasing information originally placed under seal in *Smith* "to facilitate public access to public records[.]"[49] Given the public interest in the use of a novel method of

---

[47] *Yorktown Sys. Grp. Inc. v. Threat Tec LLC*, 108 F.4th 1287, 1296 (11th Cir. 2024) (citation omitted).

[48] Mike Cason, *AG Steve Marshall on 'textbook' nitrogen execution: 'Alabama has done it and now so can you,'* AL.com, Jan. 26, 2024, https://www.al.com/news/2024/01/ag-steve-marshall-expects-other-states-to-follow-alabamas-textbook-nitrogen-execution.html.

[49] *Smith*, No. 2:23-cv-656-RAH (June 27, 2024), ECF No. 115.

execution, granting a preliminary injunction would not frustrate but would honor that interest. Moreover, the public has no interest in executing a person in violation of the Eighth Amendment.[50]

### E. The balance of equities favors Mr. Frazier.

On balance, the equities (those factors other than likelihood of success on the merits) favor Mr. Frazier. "While the movant need not *always* show a 'probability' of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that *the balance of the equities,* [i.e. the other three factors] *weighs heavily in the favor of granting the stay.*"[51]

While the State has an interest in enforcing its criminal judgments,[52] Defendants do not have an interest in carrying out an unconstitutional execution. Delay in requesting an injunction is a factor in evaluating entitlement to an injunction, but not the determinative factor.[53] Here, any delay is minimal and certainly does not prejudice Defendants, and virtually all of it is attributable to

---

[50] *See*, *e.g.*, *Smith v. Dunn*, 516 F. Supp. 3d 1310, 1339 (M.D. Ala. 2021), *rev'd on other grounds*, 844 F. App'x 286 (11th Cir. Feb. 10, 2021) ("The court agrees with Smith that carrying out executions in an unconstitutional manner would . . . fail[] to serve the public interest.").

[51] *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984) (citations and some quotation marks omitted; emphases and brackets in original).

[52] *Jones v. Allen*, 485 F.3d 635, 638 (11th Cir. 2007).

[53] "[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

Defendants' lack of transparency. Defendants should not be encouraged to refuse to give prisoners and their counsel information necessary to challenge a method of execution, while later blaming the prisoner and seeking dismissal based on the delay necessary to obtain the information.

In March 2018, Governor Ivey signed a bill authorizing nitrogen hypoxia to be used as a method of execution and giving death-sentenced prisoners 30 days to choose that as their method of execution. Marshall, Hamm, and Raybon, agreed that anyone selecting nitrogen hypoxia would not be executed by lethal injection. Defendants agreed to this knowing that Defendants *had not created a nitrogen execution protocol.*

Mr. Frazier settled his challenge to Alabama's lethal injection protocol on the ground that if he selected nitrogen as his method of execution, he would not be executed by lethal injection. Mr. Frazier "opted in" to nitrogen in June 2018 and this settlement was finalized the next month.

Over five years later, in August 2023, Defendants adopted the Nitrogen Protocol, a heavily redacted version of which was disseminated to the public. The first use of the Protocol was in January of 2024 on Kenneth Smith. Since then, it has been used twice more. Mr. Frazier took the information gleaned from witnesses to that execution as reported by the press, and after investigating, filed his challenge to the Protocol in November 2024.

Therefore, any delay is directly attributable to Defendants and their lack of transparency in this process. Mr. Frazier acted with urgency when he obtained information necessary for this litigation.

## CONCLUSION

The Protocol will violate Mr. Frazier's Eighth Amendment rights. It creates an unacceptable risk of superadded pain because it achieves hypoxia through conscious suffocation.

Mr. Frazier meets the standards for granting a preliminary injunction. He has shown a substantial likelihood of success on the merits and the other equities, including irreparable harm, are heavily in his favor. This Court should enjoin Defendants from executing Mr. Frazier with the Protocol during the pendency of this litigation while permitting his execution using one of his alternatives.

Respectfully submitted this 15th day of January 2025.

/s/John Anthony Palombi
John Anthony Palombi
Assistant Federal Defender
Federal Defenders for the
 Middle District of Alabama
817 S. Court Street
Montgomery, Alabama 36104
(334) 834-2099
John_Palombi@fd.org

*Counsel for Mr. Frazier*

## CERTIFICATE OF SERVICE

This Motion for Preliminary Injunction was filed, via the CM/ECF system, on January 15, 2025, which will cause all counsel of record to receive an electronic copy.

<u>/s/John Anthony Palombi</u>
John Anthony Palombi