# EXHIBIT F

State's Motion to Set Execution

Alabama Supreme Court

*State of Alabama v Kenneth Eugene Smith*

Case No.: 1000976

FILED
AUG 25 2023
CLERK
SUPREME COURT OF ALABAMA

# IN THE SUPREME COURT OF ALABAMA

EX PARTE: KENNETH EUGENE SMITH )
)
)
KENNETH EUGENE SMITH, )
)
Petitioner, )
) No. 1000976
v. )
)
STATE OF ALABAMA, )
)
Respondent. )

## STATE OF ALABAMA'S MOTION TO SET AN EXECUTION DATE

Pursuant to Rule 8(d)(1) of the Alabama Rules of Appellate Procedure, the State of Alabama respectfully moves this Honorable Court to authorize the Commissioner of the Alabama Department of Corrections to carry out Kenneth Eugene Smith's lawfully imposed sentence of death by means of nitrogen hypoxia within a time frame set by the Governor.

Smith has been on death row since his conviction for capital murder in 1996. Smith committed the brutal murder-for-hire of Elizabeth Dorlene Sennett, and his guilt is not in doubt. As set forth more fully below, Smith's conviction and sentence are final because he

1

has completed his direct appeal, state postconviction review, and federal habeas review. Accordingly, it is time for his death sentence to be carried out.

I. **The procedural history indicates that Smith has fully exhausted his appeals.**

   A. **Statement of the Facts**

On March 18, 1988, the Reverend Charles Sennett, a minister in the Church of Christ, discovered the body of his wife, Elizabeth Dorlene Sennett, in their home on Coon Dog Cemetery Road in Colbert County. *Smith v. State*, 908 So. 2d 273, 279-281 (Ala. Crim. App. 2000). The coroner testified that Elizabeth Sennett had been stabbed eight times in the chest and once on each side of the neck, and had suffered numerous abrasions and cuts. *Id.* It was the coroner's opinion that Sennett died of multiple stab wounds to the chest and neck. *Id.* The evidence established that Charles Sennett had recruited Billy Gray Williams, who in turn recruited Smith and John Forrest Parker, to kill his wife. *Id.* He was to pay them each $1,000 in cash for killing Mrs. Sennett. *Id.* There was testimony that Charles Sennett was involved in an affair, that he had incurred substantial debts, that he had taken out a large insurance policy on his wife, and that approximately one week after the

murder, when the murder investigation started to focus on him as a suspect, Sennett committed suicide. *Id.*

Smith detailed the following in his statement to police:

About one month prior to March 18, 1988, I was contacted by Billy Williams. Billy came over to my house and we talked out on the front porch. It was late afternoon. Billy said that he knew someone that wanted somebody hurt. Billy said that the person wanted to pay to have it done. Billy said the person would pay $1500 to do the job. I think I told Billy I would think about it and get back with him. Billy lives at the corner of Tuscaloosa Street and Cypress Street near the telephone company. Billy drives a red and white Thunderbird. Billy and I are good friends. Billy and I talked about this several times before I agreed to do it. I had already talked with John Parker about helping me. I think I first met Charles Sennett about two weeks prior to the murder. Billy arranged the meeting. At the time I met Mr. Sennett I did not know who he was. I did not ask his name and he did not ask what my name was. Mr. Sennett told me that he wanted somebody taken care of. Mr. Sennett said that the person would be at home, that they never had any visitors. Mr. Sennett said that the house was out in the country. At that time I just listened to his proposal and told him I would get back with him. When we talked we sat in Mr. Sennett's truck in front of Billy's apartment. I gave him my phone number. Mr. Sennett called me a couple of times to see if I had made a decision. Sometime between the Monday prior to the murder and the Thursday prior to the murder, Mr. Sennett learned that John and I would do what he wanted. I met with Mr. Sennett on Tuesday prior to the murder in the coffeehouse at ECM. At this meeting Mr. Sennett drew me a diagram of his house and told me that his wife and he would be out of town on Wednesday, to go down to the house and look around. By the time Sennett and I met at ECM I had learned through conversations with him that

3

it was his wife that he wanted killed and the price agreed was $1,000 each—excuse me—$1,000 each for Billy Williams, John Parker and I. The next meeting was on Thursday prior to the murder in front of Billy's apartment again. Billy, Mr. Sennett and I sat in Mr. Sennett's silver car and talked. I don't recall what time it was exactly. I think it was in the morning. At this meeting Sennett gave me $200 and showed us the rest of the money. Two hundred dollars was for anything we needed to do the job. John Parker sat in my car while Billy and I talked with Mr. Sennett. The murder was supposed to look like a burglary that went bad. This was Mr. Sennett's idea. Sennett told me to take whatever I wanted from the house. It was agreed for John and I to do the murder and then come back to Billy's apartment—to Billy's house—excuse me—and get the rest of our money. This meeting only lasted a short while. Sennett told us that he would be gone from 8:30 until noon. Then on 3/18 of '88 ... Friday, John and I got together around 8:30. We were in John's car, a Pontiac Grand Prix, gold. John drove to Muscle Shoals, then I drove down to the Sennett house. John had brought a black handle survival knife and a black holster. At this time we still did not know how we were going to kill Mrs. Sennett. John and I got to the Sennett house around 9:30, I think. I parked at the back of the house near a little patio that led into the house. I went to a door to the left of the car. I think there was a white freezer nearby. I knocked on the door and Mrs. Sennett came to the door. I told Mrs. Sennett that her husband had told us that we could come down and look around the property to see about hunting on it. Mrs. Sennett asked my name. I told her I was Kenny Smith. She went to the phone and called her husband and came back and told us it was okay to look around. John and I looked around the property for a while then came back to the house. John and I went back to the door. We told Mrs. Sennett we needed to use the bathroom and she let us inside. I went to the bathroom nearest the kitchen and then John went to the bathroom. I stood at the edge of the kitchen talking with Mrs. Sennett. Mrs. Sennett was sitting at a

4

> chair in the den. Then I heard John coming through the house. John walked up behind Mrs. Sennett and started hitting her. John was hitting her with his fist. I started getting the VCR while John was beating Mrs. Sennett. John hit Mrs. Sennett with a large cane and anything else he could get his hands on. John went into a frenzy. Mrs. Sennett was yelling just stop, we could have anything we wanted. As John was beating up Mrs. Sennett, I messed up some things in the house to make it look like a burglary. I took the VCR out to the car. The last place I saw Mrs. Sennett she was lying near the fireplace covered with some kind of blanket. I had gone outside to look in the storage buildings when I saw John run out to the pond and throw some things in it. I also took a small stereo from the house—"also," is the last word. I don't know what brand it was or where in the house I got it. The VCR was a Samsung. I got it from under the TV set in the den. When John got back to the car we drove back to Billy's apartment to get our money. On the way back John told me that he had stabbed her once in the neck. I never stabbed Mrs. Sennett at all. When John and I got to Billy's, we were given $900 a piece. Billy gave us the money. At the time of the murder I never [knew] Charles Sennett's name or his wife's. It was only when it came out in the newspaper that I learned the name of the lady that was killed and Charles Sennett. I took the Samsung VCR home with me. The last time I saw the stereo it was in John's car. It was around noon when we got to Billy's apartment. Then on 3/31/88—in parenthesis, Thursday—my house was searched by investigators and they found the VCR. I was brought to the Colbert County Courthouse where I was advised of my rights. After being advised of my rights, I gave Investigator May this written statement.

*Id.* Smith's statement to police was corroborated at trial. *Id.* at 281.

Donald Buckman, a friend of Smith's, testified that Smith approached him about one week before the murder and asked him if he would be

5

interested in participating in beating someone up in exchange for money. *Id.* Another witness, Brent Barkley, testified that Smith told him that he had been hired to beat up someone. *Id.* Barkley also stated that he saw Smith on the evening of the murder and that Smith's hand was "bruised and wrapped." *Id.* There was also testimony that Smith had in his possession a large amount of money immediately after the murder. *Id.*

Notably, while Smith attempted to minimize his role in the murder, he never denied his participation in the crime. Indeed, Smith explicitly admitted that he was hired to "do the murder" and willingly participated in the crime. *Smith*, 908 So. 2d at 279-81.

## B. Procedural History of Smith's Appeals

### 1. Trial and Direct Appeal

On April 7, 1988, the appellant, Kenneth Eugene Smith, was indicted for capital murder by the Grand Jury of Colbert County, Alabama, for the murder of Elizabeth Dorlene Sennett. Specifically, he was charged with murder made capital because it was "done for a pecuniary or other valuable consideration or pursuant to a contract or for hire," § 13A-5-40(a)(7), Ala. Code 1975. (C.R. 65-66.)

6

On February 28, 1989, venue was transferred from Colbert County to Jefferson County, where the case was originally tried. On November 3, 1989, Smith was convicted of capital murder. The jury recommended that Smith be sentenced to death, which recommendation the trial court accepted on November 14, 1989. In 1992, the case was twice remanded to the circuit court, which set aside Smith's conviction and a new trial was ordered, finding that the State's explanation of its challenges to black venire members did not meet its burden under *Batson v. Kentucky*, 476 U.S. 79 (1986). The Alabama Court of Criminal Appeals (hereinafter "ACCA") dismissed the State's appeal. *Smith v. State*, 620 So. 2d 732, 732-34 (Ala. Crim. App. 1992).

Smith was retried and again convicted of capital murder and the jury recommended a sentence of life imprisonment without parole by a vote of 11 to 1. On May 21, 1996, the trial court held a sentencing hearing and, after carefully weighing the aggravating circumstances against mitigating circumstances, sentenced Smith to death, pursuant to authority granted by § 13A-5-47(e), Ala. Code 1975. Vol. 1, Tab R-3; C. 31-37.

Smith's conviction and sentence were affirmed by the ACCA on December 22, 2000. *Smith v. State*, 908 So. 2d 273 (Ala. Crim. App. 2000); Vol. 27, Tab. R-40. Rehearing was denied on February 23, 2001. *Id*. This Court granted certiorari on June 4, 2003, but quashed the writ of certiorari as having been improvidently granted on March 18, 2005. *Ex parte Smith*, 908 So. 2d 302 (Ala. 2005); Vol 29, Tab. R-47. The certificate of judgment issued that same day. Review was denied by the United States Supreme Court on October 3, 2005. *Smith v. Alabama*, 546 U.S. 928 (2005).

### 2.    Rule 32 Proceedings and Appeal

On March 16, 2006, Smith filed a challenge to his conviction and sentence pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. The procedural history of Smith's state postconviction action was complex and lengthy, involving multiple remands, but detailed description is not necessary here. The state circuit court ultimately denied relief on Smith's Rule 32 petition, and that decision was affirmed by the ACCA on March 22, 2013. Vol. 44, Tab R-100. On February 7, 2014, the ACCA overruled Smith's application for rehearing and issued a substituted memorandum affirming the circuit court's

denial of relief. Vol. 45, Tab R-102. On February 21, 2014, Smith filed a petition for certiorari in this Court. Vol. 45-46, Tab R-103. On August 22, 2014, this Court denied Smith's petition without opinion.

### 3. Federal Habeas Proceedings and Appeal

On September 30, 2014, Smith filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Alabama. After briefing by the parties, the District Court denied relief in its final order issued on September 12, 2019. *Smith v. Dunn*, No. 2:15-CV-0384-AKK, 2019 WL 4338349 (N.D. Ala. Sept. 12, 2019). The Eleventh Circuit granted a certificate of appealability (hereinafter "COA") with respect to a single issue on January 9, 2020, and ultimately affirmed the judgment of the District Court. *Smith v. Comm'r, Alabama Dep't of Corr.*, 850 F. App'x 726, 730 (11th Cir. 2021). Smith sought certiorari relief in the United States Supreme Court on other claims, and his petition was denied. *Smith v. Hamm*, 142 S. Ct. 1108, 212 L. Ed. 2d 7 (2022).

### 4. Federal §1983 Proceedings and First Execution Setting

On June 24, 2022, the State filed a motion to set Smith's execution. This Court granted that motion on September 30, 2022,

9

setting Smith's execution for November 17, 2022. During this period, Smith raised and litigated a method-of-execution challenge to Alabama's use of lethal injection. After substantial litigation, the United States Supreme Court permitted Smith's execution to go forward late in the evening of November 17, 2022, but the State was unable to obtain the intravenous access required by Alabama's protocol within the time remaining before the death warrant expired. A federal challenge to Alabama's use of lethal injection as a method of execution for Smith remains pending in the Federal District Court for the Middle District of Alabama. Smith's prayer for relief in that matter seeks execution by means of nitrogen hypoxia, a means of execution authorized under Alabama law. Ala. Code § 15-18-82.1.

*** 

Smith has exhausted his direct appeal, his state postconviction remedies, and his federal habeas remedies. Consequently, pursuant to Rule 8(d)(1) of the Alabama Rules of Appellate Procedure, the "appropriate time" for setting the date of Smith's execution has arrived. Moreover, the State is prepared to carry out Smith's execution by

means of nitrogen hypoxia. Consequently, pursuant to Rule 8(d)(1) of the Alabama Rules of Appellate Procedure, the State respectfully moves this Honorable Court to "enter an order authorizing the Commissioner of the Department of Corrections to carry out [Smith's] sentence of death within a time frame set by the Governor," so that final justice may be visited upon the murderer of Elizabeth Dorlene Sennett. ALA. R. APP. P. 8(d)(1).

## Conclusion

Pursuant to Rule 8(d)(1) of the Alabama Rules of Appellate Procedure, the State requests that this Court "enter an order authorizing the Commissioner of the Department of Corrections to carry out [Smith's] sentence of death within a time frame set by the Governor."

Respectfully submitted,

Steve Marshall
*Attorney General*

Richard D. Anderson
*Assistant Attorney General*
Counsel of Record *

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limitation set forth in Ala. R. App. P. 27. This motion contains 2,623 words, including all headings, footnotes, and quotations, and excluding the parts of the motion exempted under Ala. R. App. P. 32(c).

I further certify that this motion complies with the font requirements set forth in Ala. R. App. P. 32(a)(7). This motion was prepared in 14-point Century Schoolbook font.

*/s/ Richard D. Anderson*

**Richard D. Anderson**
*Assistant Attorney General*
Counsel of Record *

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 25th day of August 2023, I filed the foregoing motion with the Clerk of the Court, and I served a copy of the foregoing on counsel for Smith, addressed as follows:

    Robert M. Grass
    Robert.grass@arnoldporter.com

    Jeffrey H. Horrowitz
    jeffrey.horrowitz@arnoldporter.com

    David Kerschner
    david.kerschner@arnoldporter.com

    /s/ Richard D. Anderson
    Richard D. Anderson
    *Assistant Attorney General*
    Counsel of Record *

    State of Alabama
    Office of the Attorney General
    501 Washington Avenue
    Montgomery, Alabama 36130

    Tel: (334) 353-2021
    Fax: (334) 353-8400
    Richard.Anderson@AlabamaAG.gov